**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

**DEREK STREETER,
JOSEPH GLOVER,
JOSE COBBS, and
PAUL JOHNSON,**

        **Plaintiffs,**

**v.**

        **Case No.: 3:05cv286/MCR**

**CITY OF PENSACOLA and
PENSACOLA PROFESSIONAL
FIREFIGHTERS LOCAL CHAPTER 707,**

        **Defendants.**

_____/

**O R D E R**

In this action plaintiffs Derek Streeter ("Streeter"), Joseph Glover ("Glover"), Jose Cobbs ("Cobbs"), and Paul Johnson ("Johnson") (together, "plaintiffs") sue defendants City of Pensacola ("the City") and Pensacola Professional Firefighters Local Chapter 707 ("the Union") (together, "defendants") for various civil rights violations. Pending are the motions to dismiss or, in the alternative, for more definite statement filed by the City and the Union. Plaintiffs have filed a single response to the motions. As explained below, the court grants the motions in part and denies them in part.

**BACKGROUND**

Plaintiffs, all of whom are African-Americans, are firefighters employed by the City and members of the Union. In this action plaintiffs assert that defendants have subjected them to racial discrimination and retaliation in the workplace. The court previously required plaintiffs to replead their first and second amended complaints because it concluded that

the complaints failed to present a "short and plain statement" of plaintiffs' claims, as required by Federal Rule of Civil Procedure 8.   The court further concluded that the complaints constituted "shotgun pleadings" and, in contravention of Rule 10(b), their allegations commingled claims within a single count.

In response to the court's order plaintiffs filed a third amended complaint, in which they assert the following claims:

Count I, race discrimination (hostile work environment) under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII"), against the City;

Count II, race discrimination (adverse action) under Title VII, against the City;

Count III, race discrimination (hostile work environment) under the Florida Civil Rights Act of 1992 ("FCRA"), Fla. Stat. § 760, against the City.

Count IV, race discrimination (adverse action) under the FCRA, against the City.

Count V, race discrimination (equal protection) under 42 U.S.C. § 1983, against the City.

Count VI, retaliation under Title VII, against the City.

Count VII, retaliation under the FCRA, against the City;

Count VIII, violation of the Family Medical Leave Act, 29 U.S.C. § 2601, et seq., by plaintiff Glover only against the City.

Count IX, race discrimination under Title VII, by plaintiffs Streeter, Cobbs, and Johnson only against the Union.

Count X, race discrimination under the FCRA, by plaintiffs Streeter, Cobbs, and Johnson only against the Union.

Count XI, race discrimination under 42 U.S.C. § 1981, by plaintiffs Streeter, Cobbs, and Johnson only against the Union.

Attached to the third amended complaint are copies of the Equal Employment Opportunity Commission ("EEOC") charges of discrimination brought against the City and

the Union by each of the plaintiffs.[1]   Also attached to the complaint are copies of the plaintiffs' right to sue letters from the EEOC.

In their instant motions defendants assert that plaintiffs' third amended complaint suffers from many of the same defects as did their prior, rejected complaints.  According to defendants, given plaintiffs' repeated failure to comply with the court's orders the instant complaint should be dismissed in its entirety with prejudice.   In the alternative, the defendants ask that the court require plaintiffs to once again file a more definite statement. The defendants also argue that the majority of the counts are due to be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted and that certain of the Title VII counts and the § 1983 count should be dismissed for failure to fully exhaust all administrative remedies.

Plaintiffs respond that the third amended complaint satisfies the letter and intent of Rules 8 and 10 such that the defendants have adequate notice of the claims against them

---

[1]   The courts may consider any written instrument attached to the complaint as such attachments become part of the pleading "for all purposes." Fed.R.Civ.P. 10(c).  Accordingly, plaintiffs' EEOC charges are properly considered here.

In nearly identical language, each of the plaintiffs' charges against the City alleges the following:

Racial Discrimination.  Seniority is only enforced against African Americans.  If an African American has seniority to junior White firefighters, then seniority does not matter.  White firefighters are given preferential treatment with regards to on-the-job training for skills needed for promotion, promotion and testing opportunities.  I have been humiliated and suffered loss of pay and promotions.

The charges against the Union allege:

Racial Discrimination.  Firefighter's Union Local 707 has not protected its African American union members against unfair treatment at the City of Pensacola Fire Department.  The Union consistent makes deals with the city and handles representation of Firefighters in a way that consistently favors the white Firefighters over the African American Firefighters. When we opposed some of the Union deals favoring the whites, the Union retaliated by being more secretive towards the African American Union Members.  I have been humiliated and suffered loss of pay and promotions while employed at the City of Pensacola. I pay for Union representation and have not received the benefit of that representation.

Glover's charge against the City is dated March 27, 2004; there is no record of any charge filed against the Union by Glover. The other plaintiffs' charges, against both the City and the Union, are dated from April 1, 2004, through August 3, 2004.

and that all prior defects cited by the court have been remedied.   Regarding their exhaustion of administrative remedies, plaintiffs contend that they timely filed their complaints with the EEOC and the Florida Commission on Human Relations and that their claims have been appropriately exhausted.

## DISCUSSION

First, plaintiffs' third amended complaint will not be dismissed with prejudice on the grounds the complaint continues to violate the court's previous instructions and Rule 10(b).[2]  The allegations of each count in the instant complaint still tend to be overly broad. Additionally, it is apparent that to a large extent plaintiffs have simply deleted extraneous statements rather than redrafted the substance of their claims.  Even so, the court is satisfied that a single legal theory pertaining to each count is now reasonably identifiable, especially when the text is considered together with the individual heading for each count. Thus the court's prior concern regarding plaintiffs' commingling of claims has been alleviated.  Additionally, while the complaint contains some misnumbered paragraphs (defendants advise there actually are 205 paragraphs rather than the 190 identified in the complaint), even if some degree of confusion results from this defect, it is slight and can readily be compensated for; the misnumbering alone does not warrant rejection.

Nor does the court find the complaint to be an impermissible shotgun pleading which requires a more definite statement pursuant to Rule 12(e).[3]  While the complaint still contains many repetitive and prolix allegations, plaintiffs have deleted many (though not all) of the redundant passages and have reduced the overall length of the complaint from seventy-three to thirty-three pages.[4]  While still far from a model of clarity or succinctness,

---

[2]   Rule 10(b) requires that the allegations of a claim "shall be made in numbered paragraphs, the contents of each of which shall be limited as far as practicable to a statement of a single set of circumstances . . . [and] [e]ach claim founded upon a separate transaction or occurrence . . . shall be stated in a separate count."  Fed.R.Civ.P. 10(b).

[3]   Pursuant to Rule 12(e), the court may require a more definite statement if the complaint "is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading." Fed.R.Civ.P. 12(e).

[4]   Nevertheless, it is noted that plaintiffs apparently attempted to comply, at least in part, with the court's observation that the complaint was excessively lengthy by reducing the side margins to a dimension

the complaint is not now so extensive or confused as to make it impossible to determine what is being alleged or against whom. See Byrne v. Nezhat, 261 F.3d 1075, 1128-29, 1133 (11th Cir. 2001); BMC Industries, Inc. v. Barth Industries, Inc., 160 F.3d 1322, 1327 n. 6 (11th Cir. 1998). The allegations are not so vague or ambiguous that a responsive pleading could not possibly be framed.

The court therefore finds that the third amended complaint neither needs to be dismissed for violation of Rule 10 nor to be repleaded pursuant to Rule 12(e).  Accordingly, the court shall proceed to considering whether plaintiffs have exhausted their administrative remedies and then address defendants' arguments for dismissal under Rule 12(b)(6).

Exhaustion of Administrative Remedies

The City contends that Counts I, III, and V should be dismissed for failure to exhaust administrative remedies because the claims are "clearly outside the scope of Plaintiffs' charges of discrimination against the City, allegations of new acts of discrimination not reasonably related to the charged conduct [sic], and time-barred under Title VII and the FCRA." (Doc. 62 at 13).  Adopting the principles of the City's argument, the Union likewise seeks dismissal of Counts IX and X for plaintiffs' failure to exhaust administrative remedies.

In order to litigate a claim for discrimination under Title VII, a plaintiff must first exhaust his administrative remedies by filing a charge of discrimination with the EEOC.[5] Gregory v. Georgia Department of Human Resources, 355 F.3d 1277, 1279 (11th Cir.

---

slightly less than the approximately 1.25 inches called for in Local Rule 5.1(B)(3).  While plaintiffs' formatting does not so deviate from the specifications set out in Rule 5.1(B)(3) so as to warrant rejection of their complaint, plaintiffs should be aware that the court strictly enforces such requirements.

[5]  The analysis that governs Title VII claims is the same analysis that governs FCRA claims. See Albra v. Advan, Inc., 490 F.3d 826, 834 (11th Cir. 2007); Harper v. Blockbuster Entm't Corp., 139 F.3d 1385, 1387 (11th Cir. 1998) (stating that  "[t]he Florida courts have held that decisions construing Title VII are applicable when considering claims under the Florida Civil Rights Act, because the Florida act was patterned after Title VII"); The Florida State Univ. v. Sondel, 685 So.2d 923, 925 (Fla. 1st DCA  1996) ("Federal case law interpreting Title VII . . . is applicable to cases arising under the Florida Act") (citation omitted);  Brand v. Florida Power Corp., 633 So.2d 504, 509 (Fla. 1st DCA  1994).  Furthermore, a similar exhaustion requirement applies to both Title VII and FCRA claims. Prieto v. City of Miami Beach, 190 F.Supp.2d 1340, 1343 n. 2 (S.D.Fla. 2002).

2004) (per curiam); Alexander v. Fulton County, Georgia, 207 F.3d 1303, 1332 (11th Cir. 2000) (stating that  "[n]o action alleging a violation of Title VII may be brought unless the alleged discrimination has been made the subject of a timely-filed EEOC charge").  EEOC regulations "provide that charges should contain, among other things, '[a] clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices.'" Alexander, 207 F.3d at 1332.  Although "the scope of an EEOC complaint should not be strictly interpreted," the scope of the EEOC's resulting investigation will limit the claims a plaintiff may bring in a Title VII judicial action to those that "can reasonably be expected to grow out of the charge of discrimination." Gregory, 355 F.3d at 1280.  The Eleventh Circuit has held that "judicial claims are allowed if they 'amplify, clarify, or more clearly focus' the allegations in the EEOC complaint, but has cautioned that allegations of new acts of discrimination are inappropriate." Id. at 1279-80 (citation omitted).  In examining whether a plaintiff's Title VII claim has been properly exhausted, the court must inquire whether the claims pursued in the judicial proceeding are "like or related to, or grew out of, the allegations contained in [the employee's] EEOC charge." Id. at 1280.

In Count I of their complaint plaintiffs complain of racial harassment, including being subjected to the use of racially offensive terms (for example, "DAN," which they describe as an acronym for "dumb ass nigger"; "niggers"; "black beetles"; and, in reference to African-American children, "nigglets"), threatening behavior (including the placement of nooses in the work areas of African-American firefighters and the wearing of sheets, KKK-style, by white firefighters), unfair reprimands, and fear that white firefighters could not be relied upon to protect African-American firefighters during a fire.  The court readily concludes that plaintiffs' allegations are sufficient to state a claim because they implicate a workplace that is permeated with discriminatory intimidation, ridicule, and insult that would alter the conditions of employment and create an abusive working environment. See Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993) (citations omitted).  As previously noted, however, only those judicial claims that "can reasonably be expected to grow out of the charge of discrimination," Gregory, 355 F.3d at

1280, will be considered adequately exhausted for purposes of Title VII.

Here, plaintiffs' allegations of racial slurs, threats, and other harassment that interfered with the performance of their duties do not reasonably grow out of the allegations of harassment contained in their EEOC charges, which were premised solely on the existence of tangible employment actions (i.e., that white firefighters are given preferential treatment over black firefighters with respect to seniority and promotion issues).  There are no allegations in plaintiffs' EEOC charges regarding the alleged racial slurs, threats, reprimands, fears, or any other pervasive or oppressive conditions that would reasonably have led the EEOC to investigate the workplace for a hostile work environment.  The allegations in the third amended complaint do not clarify, amplify, or more clearly focus the allegations in the original EEOC charges but instead inappropriately assert new acts of discrimination. See Gregory, 355 F.3d at 1279-80;  see also Price v. M & H Valve Co., 177 Fed.App. 1, 14 (11th Cir. 2006) (finding failure to exhaust administrative remedies for disparate impact claim where EEOC charge alleged only 1) denial of opportunity to apply for supervisory positions because positions were not advertised or white employees were promoted instead and 2) harassment through racial slurs, jokes, and differences in treatment); Cheek v. Western and Southern Life Ins. Co., 31 F.3d 497, 503 (7th Cir. 1994) (stating that "[w]hen an EEOC charge alleges a particular theory of discrimination, allegations of a different type of discrimination in a subsequent complaint are not reasonably related to them unless the allegations in the complaint can be reasonably inferred from the facts alleged in the charge"). The hostile work environment claims presented in plaintiffs' complaint could not have reasonably been expected to grow from the sketchy allegations plaintiffs made in their EEOC charges which do not, as required by EEOC regulations, contain a clear and concise statement of the facts – including dates, names, and other particulars – giving rise to the alleged unlawful employment practices. See Alexander, 207 F.3d at 1332.  Thus the court finds plaintiffs have failed to exhaust

administrative remedies for this claim, brought as Count I of the third amended complaint.[6]

Because exhaustion is required prior to bringing suit, see Chanda v. Engelhard/ICC, 234

F.3d 1219, 1225 (11th Cir. 2000) (noting that "[t]he filing of an administrative complaint with

the EEOC is ordinarily a jurisdictional prerequisite to a Title VII action"); cf. Fouche v. Jekyll

Island-State Park Authority, 713 F.2d 1518, 1524 (11th Cir. 1983) (stating that "all  Title VII

procedural requirements to suit are henceforth to be viewed as conditions precedent to suit

rather than as jurisdictional requirements"), dismissal without prejudice of Count I is

warranted.   Count III, plaintiffs' parallel claim under the FCRA, likewise is due to be

dismissed.

The City also seeks dismissal of Count V, plaintiffs' § 1983 claim alleging violation

of the equal protection clause of the U.S. Constitution, for failure to exhaust administrative

remedies. As plaintiffs were not required to exhaust administrative remedies before

bringing a § 1983 claim, see Patsy v. Florida Board of Regents, 457 U.S. 496, 102 S.Ct.

2557, 73 L.Ed.2d 172 (1982); Konikov v. Orange County, Fla., 410 F.3d 1317 (11th Cir.

2005), dismissal of Count V on this basis is not appropriate.

The Union contends that Counts IX and X have not been properly exhausted and

therefore should be dismissed.[7]  The court disagrees.   The gist of these counts, as the

court reads them, is that the Union has discriminated against plaintiffs based on their race

with respect to promotion issues.  In their EEOC charges plaintiffs alleged that the Union

has given white firefighters more favorable representation than African-American

firefighters, resulting in plaintiffs' loss of pay and promotions.  Thus the judicial claims

reasonably could  be expected to grow out of the charges of discrimination previously filed.

---

[6]  The court notes plaintiffs' passing statements in Counts I and III that they have suffered the "denial
of training opportunities."  (Doc. 60, ¶ ¶ 29 and 72).  To the extent that plaintiffs would argue that these brief
and otherwise wholly unexplained references are sufficient to demonstrate that the claims presented in Counts
I and III have been administratively exhausted, the court finds otherwise.

[7]  Title 42 U.S.C. § 2000e-2(c) addresses the liability of "labor organizations" and provides for union
liability.   Section 2000e-2(c) provides that "[i]t shall be an unlawful employment practice for a labor
organization "to exclude or expel from its membership, or to otherwise discriminate against, any individual
because of his race . . . . " 42 U.S.C. § 2000e-2(c)(1); to hinder an individual's employment opportunities, or
adversely affect his status as an employee or applicant, because of his race.§ 2000e-2(c)(2); or "cause or
attempt to cause an employer to discriminate against an individual in violation of this section." § 2000e-2(c)(3).

<u>Gregory</u>, 355 F.3d at 1280.  Furthermore, insofar as the allegations involve discrete acts of discrimination, based on the face of the complaint and attachments it appears that the claims were timely brought.[8]  <u>Ledbetter</u>, 421 F.3d at 1178-79.

 <u>Rule 12(b)(6) Motions</u>

 The City also moves for dismissal pursuant to Rule 12(b)(6).  Reiterating its contention that plaintiffs' allegations do not meet the pleading standards set forth in Rules 8 and 10, the City maintains that it is "virtually impossible to determine whether Plaintiffs have stated any claims for relief." (Doc. 62 at 10).  In a very brief argument, the City complains that the counts do not identify which allegations are material to plaintiffs' asserted claims of discrimination and retaliation; the City further contends that plaintiffs have failed to present either direct or inferential allegations with respect to the material elements necessary to sustain recovery under some viable legal theory. (<u>Id.</u>).  The Union argues more specifically in its motion for dismissal pursuant to Rule 12(b)(6).  It maintains that Counts IX and X, plaintiffs' Title VII and FCRA claims, fail to sufficiently allege that plaintiffs were qualified for, applied for, and were rejected for the promotions at issue and that other, less qualified employees who were not members of the protected class were promoted.  The Union also argues that, with respect to Count XI, plaintiffs have failed to allege the actual loss of a contract interest, as required to state a claim pursuant to § 1981. In their response, plaintiffs do not address any of defendants' Rule 12(b)(6) arguments.

 In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court must accept the material allegations of the complaint as true and draw all reasonable inferences in the plaintiff's favor. <u>See</u> <u>Sheuer v. Rhodes</u>, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974 ), <u>overruled</u> <u>on</u> <u>other</u> <u>grounds</u> <u>by</u> <u>Davis v. Scherer</u>, 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984)); <u>Kirby v. Siegelman,</u> 195 F.3d 1285, 1289 (11th Cir.

---

[8] Given the dates of the EEOC charges that plaintiffs Johnson, Cobbs, and Streeter filed against the Union (<u>see</u> n. 1, <u>supra</u>), it appears that claims pertaining to events that occurred between approximately August 2003 and June 2004, as alleged in the instant complaint, were timely exhausted.  <u>See</u> <u>National Railroad Passengers Corp. v. Morgan</u>, 536 U.S. 101, 110 (2002) (stating that Title VII mandates that initial EEOC charge must be filed within 300 days of the occurring alleged unlawful employment practice in deferral states); <u>Greene v. Seminole Electric Cooperative, Inc.</u>, 701 So.2d 646, 648 (Fla. 5th DCA 1997) (citing <u>St. Petersburg Motor Club v. Cook</u>, 567 So.2d 488 (Fla. 2d DCA  1990)) (indicating that under the FCRA, there is a charge filing limitation of 365 days from the alleged violation); Fla. Stat. § 760.11(1).

1999).  Motions pursuant to Rule 12(b)(6) test the facial sufficiency of the complaint and therefore should be analyzed in conjunction with the legal standard set forth in Rule 8.  To satisfy the pleading requirements of Rule 8, a complaint must simply give the defendant fair notice of what the plaintiff's claims are and the grounds upon which they rest. See Swierkiewicz v. Sorema, N.A., 534 U.S. 506, 510-12, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged.  See Swierkiewicz, 534 U.S. at 511(quoting Scheuer, 416 U.S. at 236); United States v. Baxter Int'l, Inc., 345 F.3d 866, 881 (11th Cir. 2003).

Until the recent Supreme Court decision in Bell Atlantic Corp. v. Twombly, 550____U.S. ____, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), courts routinely followed the rule that "a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that plaintiff could prove no set of facts in support of his claim which would entitle him to relief." Conley, 355 U.S. at 45-46.  Rejecting a literal reading of the "no set of facts" rule, the Court held in Twombly that although a complaint need not plead "detailed factual allegations," in order to survive a motion to dismiss, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ."; in other words, the complaint must include "enough facts to state a claim to relief that is plausible on its face." Twombly, 127 S.Ct. at 1964-65.  The Court further instructed that the "no set of facts" language was "best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 1969.

As noted, the City makes only a general argument for dismissal of Counts II and IV through VII pursuant to Rule 12(b)(6), neither identifying nor discussing the applicable law and facts or the particular defects in the individual counts.[9]  Notwithstanding the City's lack of specificity (and plaintiffs' failure to respond at all to the City's arguments), based upon

---

[9]   The City does not move for dismissal of Count VIII.

its own cursory review of these counts the court concludes that they provide reasonably fair notice of what the plaintiffs' claims are and the grounds upon which they rest, and that plaintiffs are entitled to offer evidence to support the claims.  See Swierkiewicz, 534 U.S. at 511-12.  Plaintiffs' claims need only include "enough facts to state a claim to relief that is plausible on its face," Twombly, 127 S.Ct. at 1964-65, and the court concludes they have done so.  The City's motion to dismiss pursuant to Rule 12(b)(6) is therefore denied.

Next, the court addresses the Union's motion to dismiss Counts IX and X, the claims of promotion discrimination pursuant to Title VII and the FCRA brought by plaintiffs Cobbs, Streeter, and Johnson, and Count XI, plaintiffs' § 1981 claim, which is based on essentially identical factual allegations.

In the third amended complaint plaintiffs allege that in the Fall of 2003, the Union "tipped off the White Firefighters that there would be six (6) openings for new Captain's positions when there was only one (1) vacancy was officially announced coming open [sic]."  (Doc. 60 at 24). Plaintiffs were also told that they could not take the necessary prerequisite training courses until the vacancy was formally announced.  Because they were aware of the availability of only one position, plaintiffs decided not to take the captains' test.  An unusually high number of white firefighters, however, took the test because of their inside information from the Union about the additional, unannounced positions.  The Union's providing information to white firefighters that it did not give to African-American firefighters reduced the "promotional opportunities of African American Firefighters who had already been disheartened to take promotional tests due to the City's providing White Firefighters the answers and African American Firefighters being skipped over for promotion even thought their test scores were higher than the White Firefighters." (Id. at 26).  In the Spring of 2004, the Union agreed to the City's request to extend the captains' promotion list for one year, thus permitting the white firefighters on the list to move into the new positions without their having to retake the test.  At the same time, however, the Union agreed to extend the lieutenants' promotion list – which then included two African-American firefighters – for only six months, which resulted the African-American firefighters' having to retake the promotions test.  The African-American

firefighters thus were forced to compete with white firefighters who had the advantage of knowing that six positions would be available due to the vacancies created by the promotions to captain.  The Union also agreed that firefighters on the existing lieutenants' list need not be immediately promoted even though promotions were immediately made from the captains' list, which had the effect of delaying Streeter and Cobbs "from having the opportunity to be promoted to for [sic] the Lieutenant's positions."  (Id. at 26).

The court concludes that Counts IX and X are insufficient to withstand the Union's motion to dismiss.  To make out a prima facie case of promotion discrimination a plaintiff must show that (1) he is a member of a group protected by Title VII; (2) he applied for and was qualified for the position in question; (3) he was not given the promotion; and (4) someone outside the protected group was given the promotion or the position was left open.[10]  See Walker, 158 F.3d at 1186 (discussing the McDonnell-Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), framework for establishing prima facie case for Title VII claim of employment discrimination).   By alleging that they are African-Americans, plaintiffs have adequately pled the first element of the prima facie standard.  With regard to second element of the standard and the lieutenant positions, Counts IX and X contain the allegation that Cobbs and Streeter were already on the promotion list for the lieutenant positions in question and thus were qualified for those jobs.  Cobbs and Streeter therefore have adequately alleged this element of the standard.  As to Johnson, however, although in Counts II and IV (both of which are claims against the

---

[10]  Contrary to the Union's position, the court finds that a prima facie case in failure to promote cases does not include as part of the fourth prong the requirement that the plaintiff show that the individual who received the promotion was equally or less qualified than the plaintiff. It is true that numerous Eleventh Circuit panels have followed Perryman v. Johnson Prods. Co., 698 F.2d 1138, 1142 n. 7 (11th Cir. 1983), which indicated in dicta that the prima facie standard included the "equally or less qualified" proviso. See, e.g., Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1089 (11th Cir. 2004); Denney v. City of Albany, 247 F.3d 1172, 1183 (11th Cir. 2001); Lee v. GTE Florida, Inc., 226 F.3d 1249, 1253 (11th Cir. 2000).  This court agrees with the conclusion in Walker v. Mortham, 158 F.3d 1177(11th Cir .1998), however, that the "earliest case" rule requires it to follow the former Fifth Circuit's decision in Crawford v. Western Electric Co., Inc., 614 F.2d 1300, 1315 (5th Cir.1980), which does not require a plaintiff to prove relative qualifications to establish a failure to promote prima facie case. Walker, 158 F.3d at 1193. See also Springer v. Convergys Customer Management Group Inc., --- F.3d ----, 2007 WL 4357395 (11th Cir. 2007) (listing elements of prima facie case and not including "equally or less qualified" requirement); Vessels v. Atlanta Indep. School Sys., 408 F.3d 763, 768 (11th Cir. 2005) (same); Harrington v. Disney Regional Entertainment, Inc., 2007 WL 3036873 (11th Cir. 2007)(citing Walker for standard and its reliance on Crawford).

City, not the Union) plaintiffs allege that Johnson was scheduled to take a test for a promotion to lieutenant, they do not allege that he in fact ever took the test or became qualified to be promoted to lieutenant. Thus Johnson's allegations do not satisfy the standard's second requirement.  The third element of the standard requires an allegation that plaintiffs were denied the promotions at issue, but Cobbs and Streeter do not allege that they were not promoted to lieutenant.  Rather, Cobbs and Streeter appear to allege only that their promotions were, for some unspecified period, in some way delayed. Finally, although required under the fourth element of the standard, Cobbs and Streeter do not allege that firefighters from outside their protected class were promoted in their stead. Thus neither Cobbs, Streeter, nor Johnson has alleged a prima facie case of discrimination regarding his promotion to lieutenant.  With respect to the captains' positions, as plaintiffs state that they elected not to take the Fall 2003 captains' test, they have not alleged that they were qualified or applied for the positions in question, as required under the second element of the standard.  Accordingly, none of the plaintiffs has alleged a prima facie case of promotion discrimination with respect to the captains' positions.

Plaintiffs are not, of course, required to allege a prima facie case of racial discrimination in order for their claims to survive dismissal pursuant to Rule 12(b)(6). Swierkiewicz, 534 U.S. at 510-12 (reasoning that in employment discrimination cases prima facie case under McDonnell-Douglas is an evidentiary standard rather than pleading standard and holding that plaintiff need not plead a prima facie case of discrimination to avoid Rule 12(b)(6) dismissal, provided his complaint gives fair notice of his claims and relief is available under some set of facts consistent with the allegations). Plaintiffs' allegations would be sufficient if, despite failing to allege a prima facie case, the complaint gave fair notice of their claims and provided adequate factual allegations to raise a right to relief above the level of the hypothetical or incredible.  Here, however, the court concludes that the allegations do not do so.  Even accepting that the sketchy and disjointed allegations contained in Counts IX and X are sufficient to show plaintiffs' intention to pursue a cause of action for promotion discrimination on the basis of race and

thus provide fair notice of their claims, the allegations nevertheless are not "enough to raise a right to relief above the speculative level . . . " and do not include "enough facts to state a claim to relief that is plausible on its face." Twombly, 127 S.Ct. at 1964-65. In short, even if true, plaintiffs' allegations, including that the Union's "tipp[ed] off" only white firefighters of the existence of five additional job openings for captain and agreed to extend the lieutenants' promotion list for only six months (as opposed to one year for the captains' list), are far too speculative and implicate a causative relationship far too attenuated and implausible to state a claim of promotion discrimination based on plaintiffs' race. For these reasons, the court concludes that none of the plaintiffs has stated a viable claim of promotion discrimination against the Union in Count IX, plaintiffs' Title VII claim, or Count X, their similar claim under the FCRA. The Union's motion to dismiss these claims therefore shall be granted.

The court further concludes that dismissal of Counts IX and X should be with prejudice. It is true that leave to amend should be freely given when justice so requires, Fed.R.Civ.P. 15(a), but the court need not "allow an amendment (1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile." Bryant v. Dupree, 252 F.3d 1161, 1163 (11th Cir. 2001). In this case, although plaintiffs have filed one amended complaint as of right and have twice amended their complaints by filing a more definite statement, they have failed to cure the deficiencies identified above.[11] Moreover, because plaintiffs have not sought leave to amend their complaint (and consequently also have not provided the court with any proposed amended claims to review), the court concludes that no basis exists for permitting plaintiffs to amend these claims yet again. See Wagner, 314 F.3d at 542 (holding that the district court was not required to sua sponte grant a counseled party leave to amend his complaint when no

---

[11]   Plaintiffs should have been apprised of the defects in their instant complaint because the Union presented the identical Rule 12(b)(6) arguments in its prior motions as it does here, even though the court did not previously address them. (See docs. 32, 54).

motion to amend was filed).

Finally, the court considers Count XI, plaintiffs' § 1981 claim against the Union.  This count recites many of the same allegations that are contained in Counts IX and X.  Inter alia, plaintiffs additionally allege that "all such discriminatory conduct on the part of the Defendant, adversely affected Plaintiffs employment contract and terms and conditions of employment . . . ."  (Doc. 60 at 33).

The Eleventh Circuit has instructed that in order to state a claim of race discrimination under § 1981 a plaintiff must allege facts establishing: (1) that the plaintiff is a member of a racial minority; (2) that the defendant intended to discriminate on the basis of race; and (3) that the discrimination concerned one or more of the activities enumerated in the statute. See Jackson v. BellSouth Telecommunications, 372 F.3d 1250, 1270 (11th Cir. 2004), citing Rutstein v. Avis Rent-A-Car Sys., Inc., 211 F.3d 1228, 1235 (11th Cir. 2000).  Among other enumerated activities, "[s]ection 1981 prohibits intentional race discrimination in the making and enforcement of public and private contracts, including employment contracts."[12]  Ferrill v. Parker Group, Inc., 168 F.3d 468, 472 (11th Cir. 1999); see also Saint Francis College v. Al-Khazraji, 481 U.S. 604, 107 S.Ct. 2022, 2026, 95 L.Ed.2d 582 (1987) (noting § 1981 has been construed to forbid all racial discrimination in the making of contracts).  The Supreme Court has held that a labor union may be subject to liability under § 1981 for racial discrimination if its conduct impairs an employee's ability to enforce his established contract rights through legal process. See Patterson v. McLean Credit Union, 491 U.S. 164, 177-78, 109 S.Ct. 2363, 105 L.Ed.2d 132

---

[12]   Section 1981 in part provides  "[a]ll persons . . . shall have the right . . . to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens. . . ." 42 U.S.C. § 1981(a).  See also Patterson v. McLean Credit Union, 491 U.S. 164, 171, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989) (reading then-applicable version of § 1981 to "prohibit[ ] racial discrimination in the making and enforcement of private contracts" but not to "conduct which occurred after the formation of a contract and which does not interfere with the right to enforce established contract obligations."), superseded by statute, as stated in Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 372-73, 124 S.Ct. 1836, 158 L.Ed.2d 645 (2004) (noting that 1991 Act overturned Patterson's holding that racial harassment relating to employment conditions was not actionable under § 1981 and that Act redefined § 1981's key "make and enforce contracts" language to include the "termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship").

(1989) (stating that "certain private entities such as labor unions, which bear explicit responsibilities to process grievances, press claims, and represent member in disputes over the terms of binding obligations that run from the employer to the employee, are subject to liability under § 1981 for racial discrimination in the enforcement of labor contracts."). See also Goodman v. Lukens Steel Co., 482 U.S. 656, 669, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987).

As previously noted, plaintiffs have adequately alleged that they are members of a racial minority.  Although plaintiffs assert the Union intended to discriminate against them on the basis of race, it is doubtful that plaintiffs have set forth facts of more than a conclusory nature that support such an inference. "[W]holly conclusory allegations" lacking sufficient factual support do not "meet even the liberal standard of notice pleading." Wagner v. Daewoo Heavy Industries America Corp., 289 F.3d 1268, 1273 (11th Cir.), rev'd on other grounds, 314 F.3d 541 (11th Cir. 2002) (en banc) (observing in employment action pursuant to § 1985  that "[p]leadings must be something more than an ingenious academic exercise in the conceivable") (quotation omitted); but see Belfast v. Upsilon Chapter of Pi Kappa Alpha Fraternity at Auburn Univ., 267 F.Supp.2d 1139, 1145 (M.D.Ala. 2003) (explaining that at the motion to dismiss stage of litigation, "[p]laintiff cannot be expected to do more than allege racial motivation or bias" because "factual information relating to motive and purpose is peculiarly in the hands (and minds) of the Defendants").

Even assuming that plaintiffs have adequately alleged intentional discrimination on the basis of race, however, the court concludes that allegations that this discrimination involved an activity enumerated in the statute, i.e., the right to enforce plaintiffs' employment contract with the City[13] – are insufficient as presently pleaded. In Patterson, the Supreme Court held that promotion discrimination claims are actionable under § 1981, as it existed prior to being amended in 1991, if "the nature of the change in position was

---

[13]  The Union's argument to the contrary notwithstanding, the court finds that plaintiffs' reference to their "employment contract" is sufficient to allege that they have a contractual relationship with the City.

such that it involved the opportunity to enter into a new contract with the employer."
Patterson, 491 U.S. at 185.  Consequently, "[o]nly where the promotion rises to the level
of an opportunity for a new and distinct relation between the employee and the employer
is such a claim actionable. . . ." Id.   In the instant case, in order to state a claim plaintiffs
must allege that the Union's discriminatory actions prevented them from entering into a
new contractual relationship with the City.  Plaintiffs have not, however, identified the terms
of their employment contract with the City or the nature of their promotion opportunities
pursuant to that contract, although presumably the rank advancements involved increases
in salary, duties, and responsibilities.  If plaintiffs' factual allegations reflected that the
promotions in fact implicated an entirely new contractual relationship, the allegations might
state a claim for relief under § 1981.  If plaintiffs' factual allegations indicated that the
promotions were simply a term or condition of their continued employment under the
existing contract, however, the allegations would not.  As pleaded, Count XI contains
insufficient factual detail showing that the Union's actions impaired plaintiffs' ability to enter
into a new and discrete contractual relationship with the City.  Because Count XI thus fails
to state a claim, the Union's motion to dismiss shall be granted.[14]  Given the possibility that
plaintiffs might be able to state a viable claim through repleading, however, dismissal will
be without prejudice and plaintiffs will be given the opportunity to file an amended
complaint that addresses the above-described deficiencies in Count XI.

---

[14]   In support of its argument that plaintiffs have failed to allege the loss of a contractual interest and
that such failure is fatal to their § 1981 claim, the Union cites Morris v. Office Max, Inc., 89 F.3d 411, 414-15
(7th Cir. 1996) (stating that a customer's "claim for interference with the right to make and enforce a contract
must allege the actual loss of a contract interest, not merely the possible loss of future contract opportunities").

Morris arose in the retail or consumer context, which is true of the other cases requiring the loss of
a contractual interest in order to make out a § 1981 claim that the court was able to locate.  See, e.g., Kinnon
v. Arcoub, Gopman & Associates, Inc., 490 F.3d 886(11th Cir. 2007) (holding that in the retail context plaintiff
must demonstrate the loss of an actual contract interest to establish a claim under § 1981); Arguello v.
Conoco, Inc.,  330 F.3d 355 (5th Cir. 2003) (finding that customer who had successfully completed her
transaction and was not actually denied the ability to engage in any contractual activity could not establish a
§ 1981 claim); Hampton v. Dillard Dep't. Stores, Inc., 247 F.3d 1091, 1101 (10th Cir. 2001) (requiring
interference with contract beyond the mere expectation of being treated without discrimination while shopping).
The Union neither cites cases in the employment setting that require the loss of a contractual interest nor
explains the possible applicability of Morris or other similar consumer cases to employment cases.

Accordingly, it is ORDERED:

1.      The motion to dismiss filed by the City of Pensacola (doc. 62) is GRANTED, to the extent Counts I and III are dismissed without prejudice.  The motion is DENIED in all other respects.

2.      The motion to dismiss filed by the Pensacola Professional Firefighters Local Chapter 707 (doc. 61) is GRANTED.  Counts IX and X are dismissed with prejudice. Count XI is dismissed without prejudice.

3.      Plaintiffs shall have ten (10) days from the date of this order in which to file a fourth amended complaint that includes only those claims that the court has indicated may proceed and addresses the above-described deficiencies in Count XI.

4.      The defendants' alternative motions for more definite statement are DENIED.

5.      All requests by the parties for costs incurred in connection with filing their motions and/or response are DENIED.

DONE and ORDERED this 18th day of December, 2007.


s/ *M. Casey Rodgers*
          **M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**